STATE OF NEBRASKA, APPELLEE, V. ROY L. BROWN, APPELLANT.
374 N.W.2d 28

Filed September 20, 1985.    No. 85-053.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Following a jury trial, the defendant was convicted of first degree assault and use of a knife in the commission of a felony. On appeal to this court the defendant assigns as errors that the trial court erred in allowing into evidence a videotaped deposition of the victim, containing a number of leading questions, and in failing to instruct the jury on self-defense and accident. We affirm.

On the night of June 8, 1984, or early morning hours of the 9th, during an argument, Anna Joyner suffered a knife wound which she claimed was caused by the defendant's stabbing her in the shoulder. As a result of that injury, she suffers from some paralysis and is unable to use her hands in order to write. Sometime after her admission to the hospital, because of treatment, including the use of intensive care apparatus, she lost much of the power of articulation.

Because of the condition of the complaining witness, the district court permitted the use of a videotaped deposition. The defendant does not object to the utilization of a deposition as such, but only to the use of leading questions. However, under the peculiar circumstances of this case, and from an examination of the deposition as received in evidence, we believe that the ruling of the trial court was well within its discretion.

Neb. Rev. Stat. § 27-611 (Reissue 1979) provides in part as follows:

(1) The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth . . . .

. . . .

(3) Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.

Section 27-611 is identical to Fed. R. Evid. 611. The drafters of the rules anticipated the testimonial problem presented in this case in an advisory committee's note:

The rule continues the traditional view that the suggestive powers of the leading question are as a general proposition undesirable. Within this tradition, however, numerous exceptions have achieved recognition: The witness who is hostile, unwilling, or biased; the child witness or *the adult with communication problems*; the witness whose recollection is exhausted; and undisputed preliminary matters. 3 Wigmore §§ 774-778. An almost total unwillingness to reverse for infractions has been

manifested by appellate courts. See cases cited in 3 Wigmore § 770. The matter clearly falls within the area of control by the judge over the mode and order of interrogation and presentation and accordingly is phrased in words of suggestion rather than command.

(Emphasis supplied.) Fed. Crim. Code & R. 237 (West rev. 1985).

As a general rule, our trial courts have been granted rather broad discretion to allow leading questions.

Our law is well settled that a trial court in a criminal case has a large, though not unlimited, discretion in granting or refusing permission to ask a witness a leading question. The discretion is a legal one and subject to proper limitations. See State v. Burton, 174 Neb. 457, 118 N.W.2d 502. As we said in that case, it is usual and proper for the court to permit leading questions in conducting the examination of a witness who is immature, unaccustomed to court proceedings, inexperienced, agitated, terrified, or embarrassed while on the stand, and lacking in comprehension of the questions asked.

State v. Hoffmeyer, 187 Neb. 701, 703, 193 N.W.2d 760, 762 (1972).

In State v. Burton, 174 Neb. 457, 118 N.W.2d 502 (1962), the defendant had been charged with indecent fondling of a minor. The court held that it was proper to allow the prosecutor to ask leading questions of two reluctant 9-year-old girls who were embarrassed about their involvement.

The Nebraska exception allowing leading questions on direct examination has developed mainly in recognition of specific personality traits of witnesses: State v. Burton, supra (youth); Campion v. Lattimer, 70 Neb. 245, 97 N.W. 290 (1903) (dull-wittedness). There appears to be no Nebraska case in which an exception was made due to a physical or communicative handicap.

However, in Parker v. State, 172 Ga. App. 540, 323 S.E.2d 826 (1984), the court approved the use of a leading question in the direct examination of a witness who was suffering from a speech impediment. That court said in effect that a judge is given latitude and discretion in permitting leading questions,

and unless there has been an abuse thereof resulting in prejudice and injury, there is no reversible error. See, also, *State ex rel. Bruner v. Sanders*, 256 Iowa 999, 129 N.W.2d 602 (1964).

We find defendant's first assignment of error to be without merit.

According to the defendant's testimony, during the initial stages of his argument with the victim, she picked up a knife, which he took away from her and threw back on the table. The argument continued, and the victim reached for the knife a second time, but once again the defendant took the knife and threw it farther away on the table. Finally, according to the defendant, he picked up the knife a third time and threw it outside.

The defendant also testified that he did not know how the victim got stabbed and that it would be only a guess on his part. On cross-examination, in response to a question as to whether he stabbed the victim, the defendant answered, "And I can honestly say that I didn't do it."

On the basis of this record the defendant insists that he was entitled to an instruction on self-defense and accident. In order to find justification or self-defense, however, it is necessary that there be a purposeful use of deadly force. In *State v. Canby*, 217 Neb. 461, 463, 348 N.W.2d 900, 901 (1984), this court noted:

> Neb. Rev. Stat. §§ 28-1406 et seq. (Reissue 1979) deal with the situations wherein the use of force is justified. Section 28-1409(4) allows, with certain exceptions, the use of deadly force once unlawful force has been used against the actor, if the actor believes that such force is necessary to protect himself against death, serious bodily harm, kidnaping, or sexual intercourse compelled by force or threat. Deadly force is defined at § 28-1406(3) to be "force which the actor uses *with the purpose* of causing or which he knows to create a substantial risk of causing death or serious bodily harm." (Emphasis supplied.)

We concluded that the defendant in that case excluded the possibility of self-defense because she claimed that she accidentally and unintentionally stabbed the victim.

There is no support for an instruction on accident. An accident is defined by Webster's Third New International

Dictionary, Unabridged 11 (1981) as: "1 a : an event or condition occurring by chance or arising from unknown or remote causes ... b : lack of intention or necessity ... 2 a : a ... sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result ...."

However, defendant denied that he stabbed the victim and denied that she may have fallen on the knife, nor does the medical testimony support any hypothesis that she did. The victim flatly stated that defendant intentionally stabbed her. In any event, the accident theory was essentially set forth in instruction No. 9, which provided in part: " 'Intentionally' means with a purpose, as distinguished from accidentally."

By instruction No. 4, in order for the jury to find defendant guilty, it was required to find that defendant caused serious bodily injury to the victim and that he did so intentionally and knowingly.

There is no prejudicial error appearing in the record, and the judgment of the district court is affirmed.

AFFIRMED.